IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| RFT Management Company, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 8:10-2503-TMC |
| v. | ) | |
| | ) | **ORDER** |
| William E. Gilbert; Stephen Gilbert; Jan Bradshaw; Courtney R. Furman; Furman Properties, LLC; Lake Greenwood Developers, LLC; John D. Powell; Professional Appraisal Service, Inc.; Tinsley & Adams, LLP; and Welborn D. Adams; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**I.**

**A.**

This case is before the court by way of a second motion to dismiss by defendants Tinsley & Adams, LLP and Welborn D. Adams (collectively, T&A). (Dkt. No. 114.) Also before the court are a motion for reconsideration or in the alternative certification to the South Carolina Supreme Court (Dkt. No. 116) and motion to amend/correct the complaint by plaintiff RFT Management Company, LLC (RFT) (Dkt. No. 117). The court will also consider a motion to dismiss by defendants John D. Powell and Professional Appraisal Service, Inc. (collectively, Powell). (Dkt. Nos. 8, 130).[1]

---

[1] Powell styled his current motion as a "Motion for Hearing on Certain 12(b) Defenses" (Dkt. No. 130), which referenced objections in his answer (Dkt. No. 8) to the complaint under Rule 12(b)(6), Fed. R. Civ. P. for failure to state a claim upon which relief may be granted. The court is construing his Rule 12(b)(6) objections as a motion to dismiss. Powell, without waiving his Rule 12(b)(6) defenses as to other claims, sought a hearing on those defenses that corresponded with the issues raised in T&A's second motion to dismiss. (*See* Dkt. No. 130 at 1–

Having carefully considered the submissions by the parties and in its judgment, the court grants T&A's second motion to dismiss and Powell's motion to dismiss. (Dkt. Nos. 114, 8.) Furthermore, the court denies RFT's motion for reconsideration or certification to the South Carolina Supreme Court and RFT's motion to amend/correct. (Dkt. No. 116, 117.)

**B.**

RFT filed a multi-count complaint against various defendants, alleging that through a series misrepresentations and fraud, RFT was induced into purchasing two lots of real property on Lake Greenwood from defendant Lake Greenwood Developers (LGD). T&A served as the closing attorneys for the transaction, and Powell provided appraisal services. (Dkt. No. 1.) Prior to RFT's filing its federal complaint, it brought suit in state court against T&A, alleging legal malpractice, breach of fiduciary duty, violation of the South Carolina Uniform Securities Act, and violation of the SCUPTA. (Dkt. No. 38-3.) The South Carolina Court of Common Pleas directed a verdict for T&A on all claims, except for the legal malpractice claim. A jury found for T&A on the legal malpractice claim. (Dkt. No. 38-1.)

Subsequently, RFT filed the federal complaint. In this complaint, RFT alleges that through their actions, T&A and Powell violated the South Carolina Uniform Securities Act, S.C. Code Ann. § 35-1-501 (Supp. 2011); the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 35-1-509(g)(5) (Supp. 2011) (SCUPTA); the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 through -1720 (2006, as amended) (ILSA); and the Securities Act of 1934, 15 U.S.C. § 78(j) (2006, as amended) (Securities Act) and Rule 10b-5 promulgated under the Securities Act, 17 C.F.R. Section 240.10b-5. (Dkt. No. 1 at 14–20.) Further, RFT alleges T&A

---

2.) In the interest of judicial economy and with the consent of the parties, the court considers Powell's motion as well.

also conspired to defraud and alleges further counts against Powell for fraud, deceit, negligence, gross negligence, and recklessness (*Id*. at 19, 20–22).

The district court previously entered an order in this case, upon T&A's first motion to dismiss.[2] (Dkt. No. 111.) In that order, the district court dismissed RFT's claims against T&A for violation of the SCUPTA, the South Carolina Uniform Securities Act, and civil conspiracy as barred by res judicata. (*Id*. at 9–10.) The district court held that the state court dispositions of these issues were final for purposes of res judicata, despite the pendency of an appeal. (*Id*. at 8.) However, the district court declined to rule upon RFT's ISLA claim because both RFT and T&A applied the incorrect res judicata standard in their memoranda. (*Id*. at 10.) Finally, the district court declined to address RFT's Securities Act and Rule 10b-5 claims because it was concerned that RFT's claim failed to "state a cognizable cause of action" in light of the Supreme Court's holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994). The court granted leave to refile as to the issues left unresolved. (Dkt. No. 111 at 1.)

**II**.

Under Rule 12(b)(6), Fed. R. Civ. P., a court may grant a motion to dismiss for failure to state a claim upon which relief may be granted when, construing allegations in a light most favorable to the plaintiff and assuming facts alleged in the complaint to be true, no relief could be granted as a matter of law "under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999) (stating that the court must accept "as true the facts as alleged in the complaint" and view them in a light most favorable to the plaintiff). To survive a Rule

---

[2]     This case was originally assigned to former District Judge Henry F. Floyd, who filed the first order. (Dkt. No. 111.) Upon Judge Floyd's confirmation by the United States Senate to the United States Court of Appeals for the Fourth Circuit, this case was reassigned to the undersigned. (Dkt. No. 141.)

12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.SC. 544, 570 (2007)).

## A.
## RFT's ILSA Claim

The court will first consider RFT's claim that T&A and Powell are subject to liability under the ILSA, 15 U.S.C. § 1703, for aiding and abetting its violation. At issue here is whether the ILSA or caselaw provides for secondary aiding and abetting liability against defendants similarly situated to T&A and Powell. The court holds that the ILSA does not permit liability for aiding and abetting an ILSA violation. RFT does not present a cognizable claim as a matter of law, and the court therefore grants T&A's and Powell's motion to dismiss.

When interpreting a statute, like the ILSA, the judiciary's task is to construe what Congress has enacted; to do so, the court looks to the statutory language. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). The ILSA provides a private right of action that applies, by its clear and unambiguous language, only to a "developer or agent if the sale or lease was made in violation of section 1703(a)." 15 U.S.C. § 1709(a); *see also id.* at § 1703 (outlining prohibited activity). The ILSA defines developer as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." *Id*. § 1701(5). An agent under the ILSA is "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to see or lease, any lot or lots in a subdivision; but shall not include an attorney whose representation of another person consists solely of rendering legal services." *Id*. § 1701(6).

Unequivocally, T&A and Powell are not developers or agents directly engaged in the activities prohibited by the ILSA and RFT does not contend otherwise. *See Gibbes v. Rose Hill*

*Plantation Dev. Co.*, 794 F.Supp. 1327, 1333 (D.S.C. 1992). ("In order to qualify for ILSA protection, a plaintiff must show that he purchased a lot from a defendant who qualifies as a developer or developer's agent under ILSA."). Nor are T&A or Powell indirect sellers under the ILSA. *Id*. ("[A]n indirect seller is one who conducts selling efforts through means other than direct, face-to-face contact with buyers" (citing *Bartholomew v. Northampton Nat'l Bank of Easton, Pa.*, 584 F.2d 1288, 1293 (3rd Cir. 1978)).

Instead, RFT asserts that parties may be secondarily liable under the ILSA "where they are involved in some manner in the developer's selling efforts." (Dkt. No. 124 at 6.) RFT's assertion vastly expands the reach of ILSA. Courts have expanded the reach of the ILSA to encompass officers and directors who control the performance of activities prohibited by the ILSA. *Kemp v. Peterson*, 940 F.2d 110 (4th Cir. 1991); *see also Hester v. Hidden Valley Lakes, Inc.*, 495 F.Supp. 48 (N.D. Miss 1980) (holding that officers of a development corporation could not escape ILSA liability when they had sufficient control over their employees). However, as the district court stated in *Gibbes*, "The determining factor [as to officer/director liability] is whether each defendant participated in sales or could be considered as a controlling person in an organization that participated in sales." 794 F.Supp. at 1333.[3] RFT's complaint alleges precisely the opposite—that LGD and other defendants were the principal violators as developers and

---

[3] The court notes that at least one circuit court of appeal has stated that "directors and officers who participate with a corporation or its 'selling agents' in fraud in violation of the [ILSA] are guilty of aiding and abetting." *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975). However, in *McCown*, the 10th Circuit Court of Appeals based its reasoning upon a theory of aider and abettor liability then permitted under the Securities Act. As the court will discuss *infra* Sec. II.B, the Supreme Court rejected aider and abettor liability under the Securities Act in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994). Therefore, the authority of any case establishing aider and abettor liability under the ILSA by way of analogy with the Securities Act is questionable. In any event, the Fourth Circuit never adopted this theory of aider and abettor liability.

agents of the ILSA and that T&A and Powell merely aided and abetted the violations. (Dkt. No. 1 at 14–15.) At no point in the complaint does RFT alleges that either T&A or Powell directed or controlled the alleged ILSA violations by LGD or other defendants.[4]

The court holds that no cause of action for aider and abettor liability under the ILSA exists in this district or in the Fourth Circuit. As such, RFT does not present a cognizable claim, and the court grants T&A's and Powell's Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted.

**B.**
**RFT'S SECURITY ACT AND RULE 10B-5 CLAIMS**

As the court noted, *supra* Sec. I, the district court previously was concerned that RFT did not state a cognizable claim under the Securities Act or Rule 10b-5. The court holds that aider and abettor liability is not available under either the Securities Act or Rule 10b-5, nor did RFT sufficiently allege that T&A or Powell were principal violators of the Securities Act or Rule 10b-5. Therefore, the court grants T&A's and Powell's Rule 12(b)(6) motions.

The Securities Act states that it shall be

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

---

[4] RFT does cite *Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182 (D.N.J. 1993) for the proposition that an attorney may held liable under ILSA for aiding and abetting. However, that decision was vacated by the United States Court of Appeals for the Third Circuit in an unpublished decision without further comment. *Rolo v. City Investing Co. Liquidating Trust*, __ Fed. Appx. ___, 66 F.3d 312 (3rd Cir., 1995). The court notes that RFT incorrectly stated in its memorandum of law that the *Rolo* decision was "reversed on other grounds" by the Third Circuit. In fact, the Third Circuit vacated the district court's decision, and the district court's decision retains no authority. RFT does not cite to any other cases in support of this proposition.

15 U.S.C. § 78j. Furthermore, Rule 10b-5, promulgated under this section makes it unlawful to

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

As pointed out by T&A and Powell—and conceded by RFT (Dkt. No. 124 at 7–8)—the Supreme Court has determined that neither of these sections provides for aider and abettor liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) ("We reach the uncontroversial conclusion . . . that the text of the 1934 [Securities] Act does not itself reach those who aid and abet a § 10b violation."); *see also Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., et al.*, 552 U.S. 148, 157 (2008) ("In Central Bank, the Court determined that § 10(b) liability did not extend to aiders and abettors."); and *see Stoneridege*, 552 U.S. at 158 ("The § 10(b) implied private right of action does not extend to aiders and abettors."). Congress has not subsequently established liability for aiding or abetting a Securities Act or Rule 10b-5 violation, so such a claim fails as a matter of law.

Instead, RFT now states that it sufficiently pleaded in its complaint that T&A was a primary violator of the Securities Act and Rule 10b-5. (Dkt. No. 124 at 8.) However, the court finds RFT's belated attempts to recast its complaint unpersuasive. Under the portion of the

complaint titled, "Count III. Violation of 15 U.S.C. § 78(j) and Rule 10 b-5 Promulgated Thereunder," RFT alleges with specificity that LGD and other defendants violated the Securities Act. (Dkt. No. 1 at 17–18.) RFT then states, in paragraph 80, "[T&A and Powell] knowingly aided and abetted [LGD's] violations and are therefore liable jointly and severally for all damages caused by LGD's violations." (*Id*. at 18.) RFT's complaint is unequivocally clear—it alleges that T&A and Powell were aiders and abettors of LGD's violation of the Securities Act and Rule 10b-5. RFT simply did not allege that T&A or Powell were principal violators of either the Securities Act or Rule 10b-5 promulgated thereunder. Thus, the court grants T&A's and Powell's motions to dismiss as to this claim.[5]

## C.
### RFT'S MOTION TO AMEND

RFT seeks leave from the court to amend its complaint to allege principal liability under the Securities Act and Rule 10b-5. (Dkt. No. 117, Dkt. No. 124 at 8.) The court denies this motion.

In order to amend a complaint after the scheduling order's deadline has passed, a plaintiff must first demonstrate good cause under Rule 16(b), Fed. R. Civ. P. Next, before granting a motion to amend, the court should consider if "justice so requires" amendment under Rule 15(a). *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997); *see also Montgomery v. Anne Arundel County, MD*, 182 Fed. Appx. 156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party."). "Properly construed, 'good cause' means that the scheduling deadlines cannot be met despite a party's

---

[5]     T&A also raises a statute of limitations issue as to this claim. In light of the court's granting of the Rule 12(b)(6) motion, the court declines to address that issue.

diligent efforts." *Dilmar Oil Co.*, 986 F.Supp. at 980.

The court is not persuaded that RFT has established good cause justifying leave to amend. RFT's motion to amend was not filed until June 1, 2011—after the expiration of the April 18, 2011 deadline to file amended pleadings, after the district court's initial order dated May 24, 2011 and after T&A's second motion to dismiss dated May 27, 2011. Furthermore, the motion to amend was filed over two years after the inception of the underlying case in state court, and over ten months after the complaint was filed in this action. RFT alleges no new facts to support the motion to amend and had ample time and opportunity prior to the expiration of the scheduling order deadline to amend its pleading to include allegations of principal liability. RFT states that "prior to the issuance of the Court's May 24, 2011 order, there had not been even the suggestion of a defense based upon the availability of aider and abettor liability under Rule 10b-5." (Dkt. No. 128 at 1–2.) The court notes that it is not the responsibility of the court or the opposing parties to notify a plaintiff as to deficiencies in the complaint. That RFT only discovered that it wanted to amend its pleading after an opposing party moved to dismiss the allegations contained in that pleading is not a good cause justifying a grant of leave to amend.

### D.
### RFT'S MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE FOR CERTIFICATION TO THE SOUTH CAROLINA SUPREME COURT

RFT also requests that the court reconsider the previous determination that a lower court's decision is final for purposes of preclusion, despite pendency on appeal. In the alternative, RFT seeks certification of this question to the South Carolina Supreme Court. (Dkt. No. 116.) Both motions are denied.

While the text of Rule 59(e), Fed. R. Civ. P., does not provide a standard for a motion for reconsideration, the Fourth Circuit has recognized that an earlier judgment should be amended

"(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998) (citing *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997)). A Rule 59(e) motion may not be used to raise issues or arguments that could have been raised earlier, nor may a Rule 59(e) motion be used to raise a novel theory of law that was likewise available earlier. *Pac. Ins. Co.*, 148 F.3d at 403. By its own submission, RFT submits its Rule 59(e) motion to prevent manifest injustice. (Dkt. No. 116-1 at 2–3.)

RFT's argument for granting the Rule 59(e) motion is unpersuasive. RFT and T&A have twice briefed the issue of finality of the lower court judgment. As the district court noted in its initial order, the South Carolina Supreme Court would likely hold "that a judgment is final for preclusion purposes in South Carolina during the pendency of an appeal." (Dkt. No. 111. at 8.) This view is in accordance with the majority rule among state courts. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1039–40 (Md. Ct. Spec. App. 2004) (listing various state court cases demonstrating the majority view). Furthermore, this district has previously held that the South Carolina Supreme Court would adopt the majority position. *Sea Cabin on the Ocean IV Homeowners Ass'n v. City of N. Myrtle Beach*, 828 F.Supp 1241, 1249 n. 20 (D.S.C. 1993); *Dawson v. State Law Enforcement Div.*, CA No. 3:91-1403-17, 1992 WL 208697 at *3–4 (D.S.C. Apr. 6, 1992). Therefore, the court affirms the initial order's determination that a trial court adjudication is final while pending appeal and denies RFT's motion for reconsideration. Accordingly, the court also finds that this issue is resolved and declines to certify a question to the South Carolina Supreme Court.

**IV.**

Based on the above reasoning, T&A's and Powell's Rule 12(b)(6) motions to dismiss are **GRANTED** as to the ILSA and Securities Act and Rule 10b-5 claims. (Dkt. Nos. 114, 8, 130.) Furthermore, RFT's motion to amend its complaint (Dkt. No. 117) and motion for reconsideration, or in the alternative for certification to the South Carolina Supreme Court (Dkt. No. 116) are **DENIED**.

    **IT IS SO ORDERED.**

                                          s/Timothy M. Cain\
                                          Timothy M. Cain\
                                          United States District Judge

Greenville, South Carolina\
January 26, 2012